| | |
|---|---|
| SOUTHLAND NATIONAL INSURANCE CORPORATION in Liquidation; BANKERS LIFE, INSURANCE COMPANY in Rehabilitation; COLORADO BANKERS LIFE INSURANCE COMPANY in Rehabilitation; and the SPECIAL DEPUTY REHABILITATORS of COLORADO BANKERS LIFE INSURANCE COMPANY and BANKERS LIFE INSURANCE COMPANY and the SPECIAL DEPUTY LIQUIDATORS of SOUTHLAND NATIONAL INSURANCE CORPORATION, on behalf of both the policyholders and creditors of each of these insolvent companies,<br><br>    *Plaintiffs,*<br><br>v.<br><br>GREG E. LINDBERG, CHRISTOPHER HERWIG, DEVIN SOLOW, GLOBAL GROWTH HOLDINGS, INC., STANDARD ADVISORY SERVICES, LTD., EDWARDS MILL ASSET MANAGEMENT, LLC, ACADEMY FINANCIAL ASSETS, LLC, ALPHARETTA, LLC, AR PURCHASING SOLUTIONS, LLC, AR PURCHASING SOLUTIONS 2, LLC, COMPLYSMART, LLC, AUGUSTA ASSET MANAGEMENT, LLC, BALDWIN ASSET MANAGEMENT, LLC, CAPITAL ASSETS FUND I, LLC, CAPITAL ASSETS FUND II, LLC, CAPITAL ASSETS FUND IV, LLC, CAPITAL ASSETS FUND V, LLC, CAPITAL ASSETS MANAGEMENT, II, LLC, CAPITAL ASSETS MANAGEMENT III, LLC, CHATSWORTH ASSET MANAGEMENT, LLC, CV INVESTMENTS, LLC, DAMASCUS ASSET MANAGEMENT, LLC, EPHESUS | **DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

| | |
|---|---|
| ASSET MANAGEMENT, LLC, FOREST PARK ASSET MANAGEMENT, LLC, GBIG HOLDINGS, LLC, GILFORD ASSET MANAGEMENT, LLC, HAMPTON ASSET MANAGEMENT, LLC, HPCSP INVESTMENTS, LLC, INTRALAN INVESTMENTS LIMITED, IRON CITY ASSET MANAGEMENT, LLC, ITECH FUNDING, LLC, JACKSON ASSET MANAGEMENT, LLC, KITE ASSET MANAGEMENT, LLC, LILLY ASSET MANAGEMENT, LLC, MARSHALL ASSET MANAGEMENT, LLC, PARADISE ASSET MANAGEMENT, LLC, ROCKDALE ASSET MANAGEMENT, LLC, STANDARD FINANCIAL LIMITED, SUMMERVILLE ASSET MANAGEMENT, LLC, and TYBEE ISLAND ASSET MANAGEMENT, LLC, | § § § § § § § § § § § § § § § § § § § § § § § § § |
| *Defendants.* | § |

Defendants Greg E. Lindberg; Global Growth Holdings, Inc.; Academy Financial Assets, LLC; Alpharetta, LLC; AR Purchasing Solutions, LLC; AR Purchasing Solutions 2, LLC; ComplySmart, LLC; Augusta Asset Management, LLC; Baldwin Asset Management, LLC; Capital Assets Fund I, LLC; Capital Assets Fund II, LLC; Capital Assets Fund IV, LLC; Capital Assets Fund V, LLC; Capital Assets Management II, LLC; Capital Assets Management III, LLC; Chatsworth Asset Management, LLC; CV Investments, LLC; Damascus Asset Management, LLC; Ephesus Asset Management, LLC; Forest Park Asset Management, LLC; GBIG Holdings, LLC; Gilford Asset Management, LLC; Hampton Asset Management, LLC; HPCPS Investments, LLC; Iron City Asset Management, LLC; iTech Funding, LLC; Jackson Asset Management, LLC; Kite Asset Management, LLC; Lilly Asset Management, LLC; Marshall Asset Management, LLC; Paradise Asset Management, LLC; Rockdale Asset Management, LLC; Summerville Asset

Management, LLC; and Tybee Island Asset Management, LLC ("Moving Defendants"), pursuant to Rules 8(a), 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of their Partial Motion to Dismiss Plaintiffs' Amended Complaint requesting dismissal of Counts 1 through 5, 8 and, 9 of the Amended Complaint filed on September 26, 2023 (ECF 41) by Plaintiffs Southland National Insurance Corporation in Liquidation; Bankers Life, Insurance Company in Rehabilitation; Colorado Bankers Life Insurance Company in Rehabilitation; and the Special Deputy Rehabilitators of Colorado Bankers Life Insurance Company and Bankers Life Insurance Company and the Special Deputy Liquidators of Southland National Insurance Corporation, on behalf of both the Policyholders and Creditors of each of these Insolvent Companies.

Moving Defendants previously moved to dismiss Plaintiffs' initial complaint, in part. Plaintiffs did not respond to Moving Defendants' motion to dismiss, but instead filed their current, amended complaint. The amended complaint does not address the pleading deficiencies identified in Moving Defendants' original motion to dismiss. Accordingly, the Moving Defendants re-urge their partial motion to dismiss as follows:

## NATURE OF CASE

This is a placeholder lawsuit. By their own admission, Plaintiffs have "over 30 civil cases" pending against one or more of these defendants, based on many of the same allegations, and seeking similar relief. ECF 41 at ¶ 270. Plaintiffs brought this additional lawsuit to toll limitations on RICO claims while their other lawsuits continue to play out.[1]

---

[1] Moving Defendants do not waive, but expressly reserve all defenses, including that Plaintiffs' claims are indeed barred by limitations.

In racing against the clock to get this lawsuit on file, Plaintiffs failed to meet the Rules' pleading standards. Rule 9(b)'s heightened pleading standard applies to most of Plaintiffs' claims, and Plaintiffs do not satisfy its "particularity" requirement. Instead of alleging who did what when, Plaintiffs lump forty (40) defendants together so that none have fair notice of the allegations against them. This impermissible "group pleading" fails even Rule 8's less rigorous standard and, therefore, dooms Plaintiff's causes of action. Accordingly, Plaintiffs' complaint should be dismissed.

In the alternative, the Court should abate this case while the dozens of other cases remain pending; otherwise, there is a substantial risk of inconsistent rulings.

## RELEVANT BACKGROUND

Since October 2019, one or more Plaintiffs have filed "over 30 civil cases" against one or more Defendants, all arising out of substantially the same circumstances. ECF 41 at ¶ 270. This case is the latest one.

In short, Plaintiffs are North Carolina insurance companies ultimately owned by Defendant Greg Lindberg. *See* ECF 41 at ¶¶ 1, 7. They made investments into affiliated companies – entities also owned ultimately or beneficially by Lindberg – as allowed by North Carolina law and with the express approval of the North Carolina Department of Insurance. *See id.* at ¶¶ 74, 78, 127.

But Plaintiffs have not been under Lindberg's control since June 2019 when court-appointed rehabilitators took over. *Id.* at ¶ 263. Now, those rehabilitators allege Plaintiffs had an "unlawful investment structure" that gives rise to RICO claims and other claims asserted in this lawsuit. *Id.* at ¶ 167.

# ARGUMENT

### A. Plaintiffs' RICO claims are subject to Rule 9(b)'s heightened pleading standard.

"[W]here RICO claims are based on predicate acts of fraud, the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure applies." *TM, LLC v. Anderson*, No. 2:11-CV-00071, 2012 WL 4483180 at *2 (E.D.N.C. Sept. 27, 2012) (internal quotes omitted). "In order to survive a motion to dismiss a RICO claim, a plaintiff must plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b)." *Adolphe v. Option One Mortg. Corp.*, No. 3:11-cv-418-RJC, 2012 WL 5873308 at *5 (W.D.N.C. Nov. 20, 2012) (internal quotes omitted); *see also Menasco, Inc. v. Wasserman*, 886 F.2d 681, 684 (4th Cir. 1989) (same); *Sealy v. U.S. Bank Nat'l Assoc.*, No. 3:20-CV-00431, 2020 WL 9312087 at *3 (W.D.N.C. Oct. 26, 2020) ("Where a RICO claim is based upon predicate acts of wire fraud, the claimant must plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).") (internal quotes omitted). "Conclusory allegations that are not stated with particularity do not satisfy Rule 9(b)'s requirements." *Adolphe*, 2012 WL 5873308 at *5. Rather, "a party must state with particularity the 'time, place, and contents of the false representations, as well as the identity of the person making the representations and what he obtained thereby.'" *Id.* at *6 (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Here, Plaintiffs' RICO claims are based on alleged predicate acts of wire fraud, executing a scheme to defraud Plaintiffs through specified unlawful activity and, with respect to Lindberg

and GGHI, engaging in bribery. ECF 41 at ¶ 291. Accordingly, Plaintiffs must meet Rule 9(b)'s heightened pleading standard.

**B.      Plaintiffs fail to state a RICO claim under federal law or North Carolina's RICO statute.**

Plaintiffs allege RICO claims under 18 U.S.C. § 1962, subsections (c), (a), (b), and (d), and North Carolina's RICO statute. Each count fails to state a RICO claim.

(i)      Count 1 – Section 1962(c)

To state a RICO claim under subsection (c), a plaintiff must sufficiently plead "(1) the conduct; (2) of an enterprise; (3) through a pattern of racketeering activity" that (4) "causes injury to the plaintiffs." *TM, LLC*, 2012 WL 4483180 at \*2; *Gentile v. Brunswick County Sherriff's Dept.*, No. 7:13-CV-81, 2014 WL 1331159 at \*11 (E.D.N.C. Apr. 2, 2014).

An "enterprise" for purposes of a RICO claim "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A] plaintiff must allege 'the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name.'" *Gentile*, 2014 WL 1331159 at \*11 (quoting *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001)).

Here, Plaintiffs fail to sufficiently plead an "enterprise." Plaintiffs define "Enterprise" to mean "the association-in-fact enterprise consisting of the Defendants and others working with them to carry out the wrongful activities set forth herein." ECF 41, ¶ 282. The definitions uses the defined term – "Enterprise" – within the definition, making it inherently vague and ambiguous. Regardless, Plaintiffs do not allege "the existence of two distinct entities," but instead lump all

forty (40) defendants together and calls them "by a different name." *Gentile*, 2014 WL 1331159 at *11. That is not sufficient. *Id.*

This practice of "group pleading" is consistent throughout Plaintiffs' amended complaint and is fatal to their claims. In *Adolphe*, the plaintiff sued twenty-four (24) defendants for alleged RICO violations and other claims. 2012 WL 5873308 at *2. The court in the Western District of North Carolina dismissed those claims with prejudice finding that the plaintiff failed to sufficiently plead an "enterprise." *Id.* at *5. Specifically, the court held:

> First, Plaintiff has failed to sufficiently plead that any Defendant engaged in an "enterprise." An enterprise is an "ongoing organization, formal or informal, in which the various associates function as a continuing unit." *Delk v. ArvinMeritor, Inc.,* 179 F.Supp.2d 615, 626–27 (W.D.N.C.2002). Instead, Plaintiff alleges each claim against nearly all of the twenty-four Defendants and proposed defendants, making it impossible to determine what claims are alleged against an individual Defendant, much less the alleged conduct underlying the claim. This method of "group pleading" fails to provide any defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 55. Plaintiff failed to aver any factual allegations that demonstrate the individual roles played by each Defendant, much less how those roles combined to form a continuing unit, or "enterprise."

*Id.* The same is true in this case. It is impossible to determine from Plaintiffs' amended complaint what each individual Defendant is alleged of doing or what their alleged roles were in any "enterprise." Apart from identifying them as parties, the amended complaint contains no specific mention of thirty-one (31) out of the forty (40) defendants, much less allegations of wrongdoing that would satisfy any pleading standard.[2]

---

[2] Those thirty-one (31) defendants are: CV Investments, LLC; HPCSP Investments, LLC; Intralan Investments Limited; AR Purchasing Solutions, LLC; AR Purchasing Solutions 2, LLC; ComplySmart, LLC; Standard Financial Limited; iTech Funding, LLC; Alpharetta, LLC; Baldwin Asset Management, LLC; Capital Assets Fund I, LLC; Capital Assets Fund II, LLC; Capital Assets Fund IV, LLC; Capital Assets Fund V, LLC; Capital Assets Management II, LLC; Capital Assets Management III, LLC; Chatworth Asset Management, LLC; Damascus Asset Management, LLC; Ephesus Asset Management, LLC; Forest Park Asset Management, LLC; Gilford Asset Management, LLC; Hampton Asset Management, LLC; Iron City Asset Management, LLC; Jackson Asset Management, LLC; Kite Asset Management, LLC; Lilly Asset Management, LLC; Marshall Asset Management, LLC; Paradise Asset Management,

Moreover, the amended complaint's allegations of an enterprise are not only conclusory, but inconsistent. For instance, Plaintiffs allege, on the one hand, that "[t]he Enterprise consisted of certain of the pass-through shell companies, financing companies, holding companies, and back-office service companies operating under the trade name of 'Eli Global' and later 'Global Growth,' as well as individuals employed by one or more of these companies, including the Defendants, in addition to other individuals and entities unnamed as Defendants in this action." ECF 41 at ¶ 287. Yet, Plaintiffs admit they "have no evidence, and do not allege, that the Operating Companies that Defendants acquired, their managers, or their employees were aware of or participants in Defendants' scheme." ECF 41 at ¶ 52.

As another example, Plaintiffs allege, "Lindberg, Herwig, and others working with them and at their direction had complete and exclusive control of [Plaintiffs'] investments." ECF 41 at ¶ 89. Yet, Plaintiffs also allege they "were collectively managed by another company that Lindberg owned, Global Bankers Insurance Group, LLC ('GBIG')." ECF 1 at ¶ 79. Still elsewhere, Plaintiffs allege, "Lindberg and Herwig controlled and managed all investments." ECF 41 at ¶ 109. Still elsewhere, Plaintiffs allege, "Lindberg and Herwig, as agents of [Defendant Standard Advisory Services Limited], controlled [Plaintiffs'] investments." ECF 41 at ¶ 191. Still elsewhere, Plaintiffs allege they had their own Investment Committees. ECF 41 at ¶ 91. Still elsewhere, Plaintiffs allege their Board of Directors "was required to 'approve' all investments," although they allegedly were not very scrupulous about that. ECF 41 at ¶ 109. Still elsewhere, Plaintiffs allege all "Defendants . . . control[ed] and manag[ed] [Plaintiffs'] reserves." ECF 41 at ¶ 291(B). These allegations fail

---

LLC; Rockdale Asset Management, LLC; Summerville Asset Management, LLC; and Tybee Island Asset Management, LLC.

to provide any defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

For the same reasons, Plaintiffs fail to plead a "racketeering activity." "Section 1961(1) lists the predicate acts that may constitute racketeering activity, and the plaintiff must prove each prong of the predicate offense to establish the racketeering activity element of civil RICO." *Gentile*, 2014 WL 1331159 at *12.

Here, Plaintiffs allege wire fraud and engaging in monetary transactions in property derived from unspecified unlawful activity against *all defendants*, and yet group them together while failing to plead particulars required by Rule 9(b). ECF 41 at ¶ 291. To illustrate, fraud claims require a plaintiff to plead the "who, what, when, and where" of the fraudulent conduct. *See Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 358 (8th Cir. 2011). "Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves." *Id.* at 356. Notwithstanding the length of Plaintiffs' amended complaint, it only identifies by date and substance three allegedly false representations: one by non-moving Defendant Herwig (ECF 41 at ¶ 136), another by non-moving Defendant Solow (ECF 41 at ¶ 138), and a third by "GBIG's Chief Financial Officer," who was allegedly "misled" by all Defendants (ECF 41 at ¶¶ 145-46). The "who, what, when, and where" are absent as to any Moving Defendant.

Likewise, Plaintiffs fail to sufficiently plead a "pattern" of racketeering. "The requisite 'pattern of racketeering' must include 'at least two [predicate] acts of racketeering activity.'" *Gentile*, 2014 WL 1331159 at *13 (quoting 18 U.S.C. § 1961(5)).

Here, Plaintiffs allege only two predicate acts against all Defendants: wire fraud in violation of 18 U.S.C. § 1343, and engaging in a monetary transaction derived from specified

9

unlawful activity in violation of 18 U.S.C. § 1957. ECF 41 at ¶ 291. The first requires, among other things, proof of wire transmittals in interstate or foreign commerce. 18 U.S.C. § 1343. But, Plaintiffs' amended complaint "presumes rather than details any use of the U.S. mails or electronic wire carrier in perpetrating the alleged scheme." *Crest Const. II, Inc.*, 660 F.3d at 357. "When facing a motion to dismiss, threadbare recitations of the elements of a RICO claim, 'supported by mere conclusory statements, do not suffice.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Moreover, Plaintiffs have not pleaded a second predicate act under 18 U.S.C. § 1957 either. That law requires proof of a "specified unlawful activity," as defined by Section 1956. Here, Plaintiffs rely on Defendants' alleged wire fraud in violation of 18 U.S.C. § 1343 as the "specified unlawful activity," citing 18 U.S.C. § 1956(c)(7)(A). ECF 41 at ¶ 291(B). That section circularly refers to the laundry list of acts constituting an offense under Section 1961(1), including wire fraud under Section 1343. *See* 18 U.S.C. § 1956, 1961(1). But, per above, Plaintiffs have not sufficiently pleaded wire fraud, and therefore, Plaintiffs have not pleaded a "specified unlawful activity" required to establish a "pattern of racketeering" against all Defendants. 18 U.S.C. § 1961(5).

Even so, "[T]he establishment of two isolated acts of racketeering activity do not constitute a pattern." *Gentile*, 2014 WL 1331159 at *13 (internal quotes omitted). "Rather, it is the factor of *continuity plus relationship* which combines to produce a pattern." *Id.* (emphasis in original). "Predicate acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* Open-ended continuity is not established where "the racketeering activity has a built-in ending point, and the case does not present the necessary threat of long-term, continued criminal activity." *Id.* at *14.

In *Crest Construction*, the Eighth Circuit Court of Appeals affirmed dismissal of a RICO claim where plaintiffs sued seventeen (17) defendants and alleged:

> "Defendants formed and operated an 'association in fact' that fraudulently grew a 'web of interrelated' commonly-owned and managed companies that engaged in a host of 'fraudulent and illegal' business practices, including mail and wire fraud, and used this association in fact to fraudulently induce Plaintiffs to purchase third-party vehicle loan accounts from On Time Auto and to purchase – then lose – an equity interest. The complaint further asserts that Defendants used On Time Auto as a front to maximize and divert the revenues and profits of the illegal enterprise . . .
>
> The complaint goes on to allege that Defendants manipulated the finances and accountings of On Time Auto's business accounts and converted Plaintiffs' equity interest in On Time Auto. Plaintiffs also allege that the creation and operation of the RICO enterprise made it possible for Defendants to fraudulently obtain funds from Plaintiffs . . . . The allegations continue that Defendants remained in control of the fraudulent scheme and camouflaged those illegal activities from Plaintiffs by creating false documents, operating a sophisticated shell game, and using multiple individual companies as members of the RICO enterprise not limited to the third-party companies named in the complaint. Throughout the complaint, Plaintiffs repeatedly alleged that Defendants executed these fraudulent and illegal activities by using U.S. mails, telephones, and electronic communications with the specific intent to defraud and steal form numerous victims, including Plaintiffs, and thus, the scope, magnitude, number, and pattern elevated these activities from garden variety fraud and breach of contract claims to a pattern of racketeering activity under RICO. Plaintiff's RICO claim identified some, but not all, named defendants.

660 F.3d at 353-54. Just like the plaintiffs in *Crest Construction*, Plaintiffs here allege that commonly owned companies engaged in improper practices that caused Plaintiffs to make "unlawful and fraudulent" investments and used "multiple layers of shell companies" to "divert funds," while also identifying some, but not all, named defendants and asserting that "additional individuals and entities not named" furthered the scheme. ECF 41 at ¶¶ 50, 85, 122, 143, 271. The allegations were not sufficient in *Crest Construction* to establish a "pattern" of racketeering, and they are not sufficient here either. "While the complaint is awash in phrases such as 'ongoing

11

scheme,' 'pattern of racketeering,' and 'participation in a fraudulent scheme,' without more, such phrases are insufficient to form the basis of a RICO claim." *Crest Const. II, Inc.*, 660 F.3d at 356.

In fact, the *Crest Construction* RICO claim stood on better footing than the RICO claims here. The *Crest Construction* plaintiffs alleged the defendants' business practices were illegal. In this case, Plaintiffs accuse Defendants (again, lumping *all* Defendants together) of an "unlawful and fraudulent investment scheme" where the "central idea" was to "take [Plaintiffs'] policyholder money and use it to purchase non-insurance companies for Lindberg, including Company Borrowers and other revenue-generating operating companies." ECF 41 at ¶¶ 85, 87. Repeatedly, Plaintiffs assert these "affiliated" investments were "unlawful," "dangerous," and "improper." ECF 41 at ¶¶ 85, 86. Yet, Plaintiffs admit, "At that time, North Carolina law did not limit the amount of money that an insurance company could invest into 'affiliated' companies . . . ." ECF 41 at p. 3; ¶¶ 74-75. Moreover, Plaintiffs admit the investments were made to "purchase non-insurance companies for Lindberg," and, in particular, "60 companies for Lindberg," which Plaintiffs describe as "valuable." ECF 41 at ¶¶ 87, 115, 163. Indeed, Plaintiffs allege their plan was to use those companies "to generate cash for debt reduction and long-term equity preservation." ECF 41 at ¶ 258. Taken as a whole, the "unlawful investment structure" at the heart of Plaintiffs' RICO claim simply is not a racketeering activity at all. ECF 41 at ¶ 167.

To be sure, Plaintiffs' amended complaint makes scattershot allegations of other activity, including "skimming," "circular transactions," bribery attempts by Lindberg and his unnamed "representatives," and "sham" loans, but these allegations suffer from the same maladies of those related to the alleged "unlawful investment structure." ECF 41 at ¶¶ 174, 178, 216-17, 291. Each are light on "factual enhancement" and heavy on group pleading against all Defendants and even

unidentified "representatives" and "associates." ECF 41 at ¶¶ 216, 219. This Court in the *TM, LLC* case put it this way:

> "[T]he court must consider the allegations with respect to each particular defendant, and the allegations with respect to [the moving defendants] are conclusory and speculative at best. With one exception . . . [the moving defendants] are not mentioned in connection with any transfers. Absent some factual enhancement, allegations such as 'defendants agreed, cooperated, and conspired with one another to commit the fraudulent transfers,' or that the [moving defendants and others] 'joined in a scheme such that they also acquired and maintained an interest in the enterprise through a pattern of racketeering activity,' are insufficient to satisfy *Twombly*, not to mention Rule 9(b)'s particularity requirement." 2012 WL 4483180 at *3 (internal quotes omitted).

2012 WL 4483180 at *3 (internal quotes omitted). Likewise, the Southern District of Florida thoughtfully dismissed RICO claims in *Barmapov v. Amuial*:

> Upon a careful review of the Amended Complaint, the Court agrees with Defendants that the Court must dismiss the Amended Complaint for impermissibly lumping together the Defendants throughout the pleading. Plaintiff has chosen to bring this case against approximately 23 Defendants and has failed to adequately distinguish the allegations attributable to each of the Defendants.
>
> The Court finds that Plaintiff impermissibly lumps Defendants together throughout the Amended Complaint in an improper shotgun format, rendering it unclear and confusing as to which Defendant is being charged with which conduct in violation of Fed. R. Civ. P. 8(a)(2) and 10(b), as well as in violation of Rule 9(b) as to many of the asserted claims. The Amended Complaint is replete with allegations of wrongdoing by Defendants, lumped together, without identifying which person or entity undertook the alleged acts, made the alleged statements, failed to disclose facts, received benefits, etc., rendering it unclear and confusing as to which Defendant is being charged with which conduct and on what basis. The Amended Complaint is devoid of specific allegations with respect to the separate Defendants. Plaintiff must plausibly allege what each of these Defendants specifically did to be liable as to each stated count. Further, the 20 causes of action each purport to incorporate all approximately 350 paragraphs of the Amended Complaint, despite that these paragraphs are not all properly directed at the Defendants subject to that count, nor are they pertinent to each claim.
>
> The Eleventh Circuit has explained that "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions" is improper. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). This kind of shotgun pleading "fail[s] to one

degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* Here, Plaintiff's failure to separately allege facts and claims as to each of these Defendants violates Rule 8 and *Twombly/Iqbal* – as well as Rule 9(b) as to the fraud-based claims, requiring dismissal of the Amended Complaint without prejudice."

No. 9:18-CV-80390, 2018 WL 11267365 at *5 (S.D. Fla. Dec. 12, 2018). The same analyses apply here. Plaintiffs' shotgun approach is insufficient under Rule 8, much less Rule 9(b)'s standard. Their first count should be dismissed for failure to state a claim.

(ii) Counts, 2, 3, and 4 – Section 1962(a), (b), and (d)

Like subsection (c), subsections (a), (b), and (d) require a plaintiff to plead and prove "a pattern of racketeering activity" and an "enterprise," among other elements. 18 U.S.C. § 1962(a), (b), (d); *see also TM, LLC*, 2012 WL 4483180 at *2 ("To state a RICO claim under subsection (b), plaintiff must plead facts that, if proven, would tend to establish (1) the acquisition or maintenance of an interest in or control; (2) of an enterprise; (3) through a pattern of racketeering activity."); *Id.* at *2, 4 ("To state a subsection (d) claim, plaintiff must allege that each defendant agreed that another co-conspirator would commit two or more acts of racketeering . . . . Conclusory allegations with respect to each defendants' involvement in planning and executing the alleged fraudulent scheme are insufficient.").

Just as Plaintiffs fail to plead an enterprise through a pattern of racketeering activity under subsection (c), so too do they fail to plead the same under subsections (a), (b), and (d). Accordingly, Plaintiffs' second, third, and fourth claims should be dismissed.

(iii) Count 5 – North Carolina RICO

Plaintiffs' state law RICO claim fails for all the same reasons and more as their federal law claim. That is because North Carolina's RICO statute bears relevant similarities to the federal version.

Specifically, under North Carolina's statute, "No person shall: (1) engage in a pattern of racketeering activity . . . or (2) conduct or participate in, directly or indirectly, any enterprise through a pattern of racketeering activity . . . or (3) conspire with another or attempt to violate any of the provisions of subdivision (1) or (2)." N.C. Gen. Stat. Ann. § 75D-4. The state law defines "pattern of racketeering activity" as "engaging in at least two incidents of racketeering activity that have the same or similar purposes, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics . . . ." N.C. Gen. Stat. Ann. § 75D-3(b). Moreover, North Carolina's statute incorporates the federal definition of "racketeering activity," and nearly mirrors the federal law's definition of "enterprise." *Id*. § 75D-3(a), (c)(2). And, like the federal rule, North Carolina claims premised on fraudulent conduct must be pled with particularity under Rule 9(b). *See Tucker v. Clerk of Court of Forsyth Cnty. ex rel. Frye*, 268 N.C. App. 153, 833 S.E.2d 260 (2019). Thus, Plaintiffs' failure to sufficiently plead these requisites under federal law necessarily means they have failed to plead them under North Carolina law as well.

Moreover, under North Carolina's version of RICO, one of the two predicate acts must be something other than mail fraud, wire fraud, or fraud in the sale of securities. N.C.G.S. § 75D-8(c) ("'pattern of racketeering activity' shall require that at least one act of racketeering activity be an act of racketeering activity other than (i) an act indictable under 18 U.S.C. § 1341 [mail fraud] or U.S.C. § 1343 [wire fraud], or (ii) an act which is an offense involving fraud in the sale of securities."); *see Gilmore v. Gilmore*, 229 N.C. App. 347, 356 (2013).

In this case, Plaintiffs allege only two predicate acts against *all Defendants*: one is wire fraud, and the other is "specified unlawful activity" based on "making use of the wires in furtherance of that scheme in violation of 18 U.S.C. § 1343." ECF 41 at ¶ 291. In other words,

both alleged predicate acts against all Defendant rest on wire fraud. That is not sufficient under North Carolina's RICO statute. *See* N.C.G.S. § 75D-8(c).

C. **The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.**

"[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id.*

Here, the only federal claims over which the Court has original jurisdiction are Plaintiffs' first four counts under the federal RICO statute. The rest of Plaintiffs' claims fall under North Carolina state law. If the Court dismisses Plaintiffs' federal RICO claims, it can and should choose not to exercise jurisdiction over the other claims, especially where there are "over 30 civil cases" currently pending that deal with many of the same parties and allegations. ECF 41 at ¶ 270.

D. **Even if the Court exercises supplemental jurisdiction over Plaintiffs' state-law claims, it should dismiss those too.**

In addition to its North Carolina RICO count, Plaintiffs' state law claims include constructive fraud arising from breach of fiduciary duty, civil conspiracy, and unfair and deceptive trade practices. The complaint does not sufficiently plead the latter two.

(i) <u>Count 8 – Civil Conspiracy</u>

"There is, under North Carolina law, no such thing as a civil action for conspiracy. There is, rather, an action for damages caused by acts committed to a formed conspiracy. In order to make out such an action, plaintiff must show (1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in

16

furtherance of the objectives, and (4) damage to the plaintiff as a result of the actions of the conspirators." *Godfredson v. JBC Legal Grp., P.C.*, 387 Supp.2d 543, 549 (E.D.N.C. 2005).

Plaintiffs' civil conspiracy claim is no claim at all and should be dismissed as such. Count 8 is plagued with the same impermissible "group pleading" that permeates the complaint. It fails to make discrete allegations against any particular defendant and instead lumps "all Defendants" together. That provides all the more reason to dismiss it.

(ii) Count 9 – Unfair and Deceptive Trade Practices Act

"The elements of an unfair or deceptive trade practice are: "(1) an unfair or deceptive act or practice by [the] defendant, (2) in or affecting commerce, (3) which proximately caused actual injury to [the] plaintiff." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc*., 245 N.C. App. 378, 382 (2016).

Once again, Plaintiffs lump all Defendants together and fail to make distinct allegations against them. That is not sufficient and Plaintiffs' ninth count should be dismissed.

**E. Alternatively, the Court should abate this case while the others are pending.**

If the Court is not inclined to dismiss this case, it should stay it. "A district court has the power to stay its proceedings." *Foushee v. RT Vanderbilt Holding Co., Inc*., No. 5:17-CV-00071-M, 2020 WL 917250, at *1 (E.D.N.C. Feb. 25, 2020). "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id*.

Of the many factors a court may consider in granting a stay is whether there exists a substantial danger of inconsistent rulings. *See Duke Energy Progress, Inc. v. Frontier Commc'ns*

28109620v1 92132.157.01

Case 5:23-cv-00340-D-RN   Document 44   Filed 10/10/23   Page 17 of 20

*of the Carolinas, Inc.*, No. 5:13-CV-617-FL, 2014 WL 4948112, at *3 (E.D.N.C. Sept. 25, 2014). Here, that factor weighs heavily in favor of a stay.

By Plaintiffs' own admission, there are dozens of other lawsuits premised on similar allegations against one or more the Moving Defendants. ECF 41 at ¶¶ 268-220. That creates an inherent risk of inconsistent rulings. Accordingly, this case should be stayed until the others are finally resolved.

## CONCLUSION

For all these reasons, Moving Defendants respectfully request that the Court dismiss Plaintiffs' amended complaint as requested herein, decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, or alternatively, stay this case. Moving Defendants further request all other relief to which they are entitled.

**CONDON TOBIN SLADEK THORNTON NERENBERG PLLC**

*/s/ Jared T.S. Pace*
Aaron Z. Tobin
atobin@condontobin.com
N.C. Bar No. 50019
Jared T.S. Pace (*Special Appearance*)
jpace@condontobin.com
Texas Bar No. 24079098
8080 Park Lane, Ste. 700
Dallas, Texas 75231
Telephone: 214.265.3800
Facsimile: 214.691.6311

*Attorneys for Defendants
Greg E. Lindberg; Global Growth Holdings, Inc.; Academy Financial Assets, LLC; Alpharetta, LLC; AR Purchasing Solutions, LLC; AR Purchasing Solutions 2, LLC; ComplySmart, LLC; Augusta Asset Management, LLC; Baldwin Asset Management, LLC; Capital Assets Fund I, LLC; Capital Assets Fund II, LLC; Capital Assets Fund IV, LLC; Capital Assets Fund V, LLC; Capital Assets Management II, LLC; Capital Assets Management III, LLC; Chatsworth Asset Management, LLC; CV Investments, LLC; Damascus Asset Management, LLC; Ephesus Asset Management, LLC; Forest Park Asset Management, LLC; GBIG Holdings, LLC; Gilford Asset Management, LLC; Hampton Asset Management, LLC; HPCPS Investments, LLC; Iron City Asset Management, LLC; iTech Funding, LLC; Jackson Asset Management, LLC; Kite Asset Management, LLC; Lilly Asset Management, LLC; Marshall Asset Management, LLC; Paradise Asset Management, LLC; Rockdale Asset*

19

28109620v1 92132.157.01
Case 5:23-cv-00340-D-RN   Document 44   Filed 10/10/23   Page 19 of 20

*Management, LLC; Summerville Asset Management, LLC; and Tybee Island Asset Management, LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.2(f)(3), I certify that the foregoing brief contains 5124 words, which is less than the 8,400 word limit imposed under the Local Civil Rule (including headings, footnotes, citations and quotations, but excluding the case caption, the signature block, any required certificates, any table of contents, any table of authorities, and any attachments, exhibits, affidavits, and other addenda) as reported by the word-processing system used to prepare the brief.

This the 10th day of October, 2023.

*/s/ Jared T.S. Pace*
Jared T.S. Pace (*Special Appearance*)

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on October 10, 2023, the foregoing document was electronically filed with the Clerk of Court and served on all counsel of record using the Court's CM/ECF system.

*/s/ Jared T.S. Pace*
Jared T.S. Pace (*Special Appearance*)