IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-340-D

SOUTHLAND NATIONAL INSURANCE )
CORPORATION, et al., )
 )
                    Plaintiffs, )
 )                                    **ORDER**
        v. )
 )
GREG E. LINDBERG, et al., )
 )
                    Defendants. )

On June 23, 2023, Southland National Insurance Corporation ("Southland"), Bankers Life Insurance Company ("Bankers Life"), Colorado Bankers Life Insurance Company ("Colorado Bankers"), the Special Deputy Rehabilitators of Colorado Bankers ("SD of Colorado Bankers"), and the Special Deputy Liquidators of Southland ("SD of Southland") (collectively "plaintiffs") filed a complaint against Greg E. Lindberg ("Lindberg"), Christopher Herwig ("Herwig"), Devin Solow ("Solow"), Global Growth Holdings, Inc. ("GGHI"), Standard Advisory Services, Ltd. ("SASL"), Edwards Mill Asset Management, LLC ("EMAM"), Academy Financial Assets, LLC ("AFA"), Alpharetta, LLC, AR Purchasing Solutions, LLC, AR Purchasing Solutions 2, LLC, Comply Smart, LLC, Augusta Asset Management, LLC, Baldwin Asset Management, LLC, Capital Assets Fund I, LLC, Capital Assets Fund II, LLC, Capital Assets Fund IV, LLC, Capital Assets Fund V, LLC, Capital Assets Management II, LLC, Capital Assets Management III, LLC, Chatsworth Asset Management, LLC, CV Investments, LLC, Damascus Asset Management, LLC, Ephesus Asset Management, LLC, Forest Park Asset Management, LLC, GBIG Holdings, LLC, Gilford Asset Management, LLC, Hampton Asset Management, LLC, HPCSP Investments, LLC, Intralan

Investments Limited, Iron City Asset Management, LLC, iTech Funding, LLC, Jackson Asset Management, LLC, Kite Asset Management, LLC, Lilly Asset Management, LLC, Marshall Asset Management, LLC, Paradise Asset Management, LLC, Rockdale Asset Management, LLC, Summerville Asset Management, LLC, Tybee Island Asset Management, LLC, and Standard Financial Limited ("SFL") (collectively "defendants") [D.E. 1].

On September 5, 2023, Lindberg and a subset of the corporate defendants moved to dismiss some claims in the complaint [D.E. 26] and filed a memorandum in support [D.E. 27]. On September 26, 2023, plaintiffs filed an amended complaint [D.E. 41].

In the amended complaint, plaintiffs allege: (1) violations of 18 U.S.C. § 1962(c) against all defendants; (2) violations of 18 U.S.C. § 1962(a) against all defendants; (3) violations of 18 U.S.C. § 1962(b) against Lindberg, Herwig, Solow, GGHI, SASL, EMAM, AFA, and GBIG Holdings; (4) violations of 18 U.S.C. § 1962(d) against all defendants; (5) racketeering under North Carolina law against all defendants; (6) constructive fraud arising from breach of fiduciary duty against Lindberg and Herwig; (7) constructive fraud arising from breach of fiduciary duty against Lindberg, Herwig, and SASL; (8) civil conspiracy under North Carolina law against all defendants; and (9) unfair and deceptive trade practices in violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§ 75-1 et seq., against all defendants. See id.[1]

On October 10, 2023, Lindberg and a subset of the corporate defendants (collectively "moving defendants") moved to dismiss some claims in the amended complaint [D.E. 43] and filed a memorandum in support [D.E. 44]. On November 30, 2023, plaintiffs responded in opposition [D.E. 60].

---

[1] Plaintiffs assert counts one, two, three, and four under various provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968.

On June 3, 2024, plaintiffs moved to dismiss EMAM without prejudice under Rule 41(a)(2) [D.E. 83]. On June 6, 2024, the court granted the motion and dismissed without prejudice EMAM from the action [D.E. 84].

On June 11, 2024, SASL moved to join in moving defendants' motion to dismiss and moved to dismiss the claims against it for lack of personal jurisdiction and insufficient service of process [D.E. 85]. See Fed. R. Civ. P. 12(b)(2), (5). On June 13, 2024, SFL moved to join in moving defendants' motion to dismiss and moved to dismiss the claims against it for lack of personal jurisdiction and insufficient service of process [D.E. 86]. See Fed. R. Civ. P. 12(b)(2), (5). On July 18, 2024, plaintiffs filed affidavits concerning service of process on SASL and SFL [D.E. 88, 89]. On July 23, 2024, plaintiffs responded in opposition to SASL's and SFL's motions to dismiss [D.E. 90].

As explained below, the court grants in part and denies in part moving defendants' motion to dismiss. The court dismisses without prejudice counts one, four, five, eight, and nine against the "company borrower" and "shell borrower" defendants.[2] The court denies moving defendants' motion to dismiss counts two and three in their entirety and denies moving defendants' motion to dismiss counts one, four, five, eight, and nine against the "control person" defendants: Lindberg,

---

[2] These defendants include Alpharetta, LLC, AR Purchasing Solutions, LLC, AR Purchasing Solutions 2, LLC, Comply Smart, LLC, Augusta Asset Management, LLC, Baldwin Asset Management, LLC, Capital Assets Fund I, LLC, Capital Assets Fund II, LLC, Capital Assets Fund IV, LLC, Capital Assets Fund V, LLC, Capital Assets Management II, LLC, Capital Assets Management III, LLC, Chatsworth Asset Management, LLC, CV Investments, LLC, Damascus Asset Management, LLC, Ephesus Asset Management, LLC, Forest Part Asset Management, LLC, Gilford Asset Management, LLC, Hampton Asset Management, LLC, HPCSP Investments, LLC, Intralan Investments Limited, Iron City Asset Management, LLC, iTech Funding, LLC, Jackson Asset Management, LLC, Kite Asset Management, LLC, Lilly Asset Management, LLC, Marshall Asset Management, LLC, Paradise Asset Management, LLC, Rockdale Asset Management, LLC, Summerville Asset Management, LLC, Tybee Island Asset Management, LLC, and Standard Financial Limited.

3

Herwig, Solow, GGHI, GBIG Holdings, SASL, and AFA.[3] The court also denies SASL's and SFL's motions to dismiss for lack of personal jurisdiction and insufficient service of process.

I.

Plaintiffs are North Carolina insurance companies that Lindberg acquired between 2014 and 2017. See Am. Compl. [D.E. 41] ¶¶ 1, 7. Lindberg was the founder and chairman of GGHI, a privately held investment company headquartered in Florida. See id. at ¶ 3. Lindberg operated a portfolio of non-insurance companies under the trade name Eli Global, and later, Global Growth. See id. Lindberg was chairman of the board for each of the plaintiffs and also served as a member of their investment committees. See id. Lindberg also was a director of SASL, which the plaintiffs retained as an investment advisor. See id.

Herwig is a resident of Raleigh, North Carolina. See id. at ¶ 4. From 2010 to 2018, Herwig served as the Chief Investment Officer ("CIO") of GGHI. See id. From 2016 to 2018, Herwig also was plaintiffs' CIO. From 2017 through 2018, Herwig was a director of SASL, a member of SASL's investment committee, and SASL's portfolio manager. See id.

Solow is a resident of Durham, North Carolina. See id. at ¶ 5. Solow was Vice President of Investment of GGHI. See id. Other Lindberg-owned entities in the Global Growth brand also employed Solow. See id.

GGHI is the largest holding company in Lindberg's privately held grouping of over 500 non-insurance companies, and Lindberg is GGHI's sole shareholder. See id. at ¶ 6. GBIG Holdings is the holding company that Lindberg used to own plaintiffs. See id. at ¶ 7. SASL was a registered investment advisor between 2016 and 2019. See id. at ¶ 8. Lindberg owned SASL, and Lindberg

---

[3] The court already dismissed EMAM from this action without prejudice. See [D.E. 84].

4

and Herwig directed it. See id. EMAM is a North Carolina company allegedly formed to create disaffiliation between plaintiffs and their investments in companies that Lindberg owned. See id. at ¶ 9. AFA is a North Carolina LLC. See id. at ¶ 10. Lindberg owned AFA, and hundreds of millions of dollars flowed in and out of AFA as a direct borrower from plaintiffs. See id.

According to plaintiffs, these individual defendants and corporate defendants are "controlling persons" that acquired an interest in or control of the alleged racketeering enterprise. See id. at ¶ 11. Plaintiffs name another six corporate defendants that Lindberg indirectly owned.[4] Lindberg, and occasionally Herwig, were either directors or managers of those companies. See id. at ¶¶ 12–17. Plaintiffs refer to these companies as the "company borrowers," because they have outstanding obligations to plaintiffs as a result of direct loans from the plaintiff insurance companies. See id. at ¶ 18. Plaintiffs name another 26 corporate defendants that plaintiffs allege the individual defendants used to facilitate loans from plaintiffs to other Lindberg-affiliated entities. See id. at ¶¶ 19–44. Plaintiffs refer to these companies as the "shell borrowers." See id. at ¶ 45. Plaintiffs also allege the existence of many other entities and associates of the alleged racketeering enterprise that Lindberg and the other control persons used to facilitate the alleged scheme. See id. at ¶¶ 46–52.

Plaintiffs allege that defendants orchestrated a fraudulent investment scheme whereby Lindberg and the other controlling persons used plaintiffs' policyholder proceeds to purchase non-insurance companies for Lindberg and facilitated investment loans to Lindberg's affiliated non-insurance companies without regard for meeting policyholder investment obligations. See id. at ¶¶ 85–123. From 2014 to 2019, defendants caused plaintiffs to transfer roughly three billion dollars

---

[4] These six corporate defendants are CV Investments, LLC ("CVI"), HPCSP Investments, LLC ("HPCSP"), Intralan Investments Limited ("Intralan"), AR Purchasing Solutions, LLC ("ARP"), AR Purchasing Solutions 2, LLC ("ARP 2"), and ComplySmart, LLC ("ComplySmart"). See id. at ¶¶ 12–17.

5

to defendants and other Lindberg-affiliated companies through loans, purchases, or assignments through the allegedly unlawful and fraudulent scheme. See id. at ¶ 85. Plaintiffs allege that for most of the affiliated investment transactions, Lindberg and Herwig executed the agreements on behalf of both the lender and the borrower. See id. at ¶ 90.

According to plaintiffs, as pressure mounted from North Carolina insurance regulators for Lindberg and the other controlling persons to stop diverting high percentages of plaintiffs' investment funds to Lindberg-affiliated entities, Lindberg and the controlling persons falsely misled regulators and plaintiffs by constructing a network of shell companies to create the illusion that Lindberg-affiliated entities were disaffiliated entities. See id. at ¶¶ 124–82. Plaintiffs allege that in furtherance of this scheme, defendants executed numerous wire transactions to transfer loan and investment funds from plaintiffs to the Lindberg-affiliated entities. See id. at ¶ 291(A)(25); [D.E. 41-1]. Plaintiffs allege that defendants then engaged in monetary transactions derived from proceeds from specified unlawful activity when defendants redistributed plaintiffs' loan and investment funds to other Lindberg-affiliated entities. See Am. Compl. ¶ 291(B); [D.E. 41-2]. Plaintiffs allege that Lindberg and GGHI attempted to bribe agents of the North Carolina Department of Insurance to continue their scheme. See Am. Compl. ¶¶ 212–25, 291(C).

## II.

Lindberg and a subset of the corporate defendants move to dismiss portions of plaintiffs' amended complaint for failure to state a claim upon which relief can be granted and for failure to meet Rule 9 pleading requirements. See [D.E. 43, 44]; Fed. R. Civ. P. 12(b)(6), 9(b). Specifically, the moving defendants ask the court to dismiss counts one through five, count eight, and count nine. See [D.E. 44] 3. The moving defendants are Lindberg, GBGHI, AFA, Alpharetta, LLC, AR Purchasing Solutions, LLC, AR Purchasing Solutions 2, LLC, Comply Smart, LLC, Augusta Asset

6

Management, LLC, Baldwin Asset Management, LLC, Capital Assets Fund I, LLC, Capital Assets Fund II, LLC, Capital Assets Fund IV, LLC, Capital Assets Fund V, LLC, Capital Assets Management II, LLC, Capital Assets Management III, LLC, Chatsworth Asset Management, LLC, CV Investments, LLC, Damascus Asset Management, LLC, Ephesus Asset Management, LLC, Forest Part Asset Management, LLC, GBIG Holdings, LLC, Gilford Asset Management, LLC, Hampton Asset Management, LLC, HPCSP Investments, LLC, Intralan Investments Limited, Iron City Asset Management, LLC, iTech Funding, LLC, Jackson Asset Management, LLC, Kite Asset Management, LLC, Lilly Asset Management, LLC, Marshall Asset Management, LLC, Paradise Asset Management, LLC, Rockdale Asset Management, LLC, Summerville Asset Management, LLC, and Tybee Island Asset Management, LLC.

SASL and SFL adopt the moving defendants' motion to dismiss, and they ask the court to dismiss all claims against them for lack of personal jurisdiction and insufficient service of process. See [D.E. 85, 86]; Fed. R. Civ. P. 12(b)(2), (5).

Under Rule 12(b)(2), plaintiff must prove personal jurisdiction. See, e.g., Mylan Lab'ys, Inc. v. Akzo, N.V., 2 F.3d 56, 59–60 (4th Cir. 1993); Fed. R. Civ. P. 12(b)(2). If the court resolves a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, a plaintiff must show a prima facie case of personal jurisdiction. See Mylan Lab'ys, Inc., 2 F.3d at 60. In deciding whether plaintiff has proven personal jurisdiction, the court "must draw all reasonable inferences arising from the [plaintiff's] proof, and resolve all factual disputes, in the plaintiff's favor." Id.; see Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014).

A motion to dismiss under Rule 12(b)(4) challenges the sufficiency or "form" of the process itself, and a motion to dismiss under Rule 12(b)(5) challenges the sufficiency of the act of "service" of process. See Fed. R. Civ. P. 12(b)(4), (b)(5); Lee v. City of Fayetteville, No. 5:15-CV-638, 2016

**7**

WL 1266597, at \*2 (E.D.N.C. Mar. 30, 2016) (unpublished), abrogated on other grounds by Wilson v. City of Jacksonville, 682 F. Supp. 3d 481 (E.D.N.C. 2023). Stated differently, a Rule 12(b)(4) motion to dismiss objects to a defect in the content of the documents served, while a Rule 12(b)(5) motion to dismiss objects to a defect in the act (or lack) of delivery. See, e.g., 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004). For example, a typical Rule 12(b)(4) challenge alleges that the entity named in the summons is different from the entity named in the complaint. A typical Rule 12(b)(5) challenge alleges that the process was delivered by a person incapable of serving process (such as a party), to a person or entity incapable of receiving service (such as a minor), or that the service was delivered in an improper way (such as via first-class mail). See, e.g., Stokes v. JPMorgan Chase Bank, NA, No. 8:11-CV-2620, 2012 WL 527600, at \*5–6 (D. Md. Feb. 16, 2012) (unpublished). Plaintiff bears the burden of establishing proper service of process. See Mylan Lab'ys, 2 F.3d at 60; Dalenko v. Stephens, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013).

Service rules ensure due process and personal jurisdiction over a defendant. Moreover, the rules concerning how to serve a corporation help to alert those receiving a corporation's mail that the mail includes a lawsuit deserving prompt attention. These rules concerning service of process apply equally to litigants proceeding with or without counsel. Service of process is not a mere formality, and courts should not overlook procedural deficiencies even if actual notice occurred. See, e.g., Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984); McDaniel v. Greyhound Lines, Inc., No. 3:08-CV-130, 2008 WL 2704774, at \*4–5 (W.D.N.C. July 7, 2008) (unpublished); Shaver v. Cooleemee Vol. Fire Dep't, No. 1:07-CV-175, 2008 WL 942560, at \*2 (M.D.N.C. Apr. 7, 2008) (unpublished); Hoyle v. United Auto Workers Loc. Union 5285, 444 F. Supp. 2d 467, 474 (W.D.N.C. 2006).

8

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also

9

may consider a document that a moving party submitted if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166. Additionally, a court may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). When RICO claims are predicated on acts of fraud, Rule 9(b)'s pleading standard applies. See Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989); TM, LLC v. Anderson, No. 2:11-CV-71, 2012 WL 4483180, at *2 (E.D.N.C. Sept. 27, 2012) (unpublished). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted); see Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019). Failure to comply "with Rule 9(b)'s pleading requirements" equals "a failure to state a claim under Rule 12(b)(6)." Harrison, 176 F.3d at 783 n.5. Nonetheless, "a court should hesitate to dismiss a [claim] under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Edmonson, 922 F.3d at 553 (quotation omitted); see Harrison, 176 F.3d at 784.

A.

As for SASL's and SFL's motions under Rule 12(b)(2), SASL and SFL argue that plaintiffs fail to allege that either defendant had sufficient contacts with North Carolina. See [D.E. 85] 3;

10

[D.E. 86] 3. For the reasons stated in plaintiffs' memorandum in opposition, the court denies SASL's and SFL's motions under Rule 12(b)(2). See [D.E. 90] 2–5, 8–12. Plaintiffs plausibly show a prima facie case of personal jurisdiction through their allegations concerning SASL's and SFL's contacts with North Carolina when these defendants entered into agreements with the North Carolina-domiciled plaintiffs, provided investment advisory and management services to the North Carolina-domiciled plaintiffs, and charged and collected service fees on hundreds of transactions concerning the North Carolina-domiciled plaintiffs' investment funds. See id. at 2–5, 11.

As for SASL's and SFL's motions under Rule 12(b)(5), SASL and SFL make no specific arguments challenging the sufficiency of the act of service of process, but argue that once a party contends it has been improperly served, "the plaintiff bears the burden of establishing the validity of service pursuant to Rule 4." [D.E. 85] 3–4 (quotation omitted); see [D.E. 86] 3–4; Slocum v. Duke Progress Energy, No. 5:23-CV-680, 2024 WL 1481069, at *2 (E.D.N.C. Mar. 19, 2024) (unpublished), report and recommendation adopted, 2024 WL 1642760 (E.D.N.C. Apr. 16, 2024) (unpublished).

Plaintiffs have established valid service under Rule 4(f)(1) for both SASL and SFL. See [D.E. 90] 12–13; [D.E. 88, 89]. Accordingly, the court denies SASL's and SFL's motions under Rule 12(b)(5).

## B.

In count one, plaintiffs allege a civil RICO claim under 18 U.S.C. § 1962(c) against all defendants. See Am. Compl. ¶¶ 279–296. Moving defendants move to dismiss this claim and argue that plaintiffs impermissibly rely on group pleading to plead the elements of this claim and fail to meet Rule 9(b)'s pleading standard. See [D.E. 44] 5–16.

11

To state a RICO claim under 18 U.S.C. § 1962(c), a plaintiff must plausibly allege: (1) the conduct; (2) of an enterprise; (3) through a pattern of racketeering activity. See 18 U.S.C. § 1962(c); Salinas v. United States, 522 U.S. 52, 62 (1997); United States v. Mouzone, 687 F.3d 207, 217 (4th Cir. 2012); Al-Abood ex rel. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2000); Morley v. Cohen, 888 F.2d 1006, 1009 (4th Cir. 1989).

"'[E]nterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity . . . ." 18 U.S.C. § 1961(4). Plaintiffs must allege "the existence of two distinct entities: (1) a person; and (2) an enterprise that is not simply the same person referred to by a different name." Gentile v. Brunswick Cnty. Sheriff's Dep't, No. 7:13-CV-81, 2014 WL 1331159, at *11 (E.D.N.C. Apr. 2, 2014) (unpublished) (quotations omitted); see Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). "Racketeering activity" includes, inter alia, "any act which is indictable" under specifically enumerated criminal statutes, including statutes criminalizing wire fraud, money laundering, and bribery in 18 U.S.C. §§ 1343, 1957, and 666(a)(2). See 18 U.S.C. § 1961(1). A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity," 18 U.S.C. § 1961(5), and the predicate acts must be related and amount to or pose a threat of continued criminal activity. See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). The requirement of at least two acts of racketeering applies to each defendant for a section 1962(c) claim, but each defendant is not required to individually commit two acts of racketeering for a section 1962(d) RICO conspiracy claim. See United States v. Pryba, 900 F.2d 748, 760 (4th Cir. 1990); United States v. Joseph, 781 F.2d 549, 554 (4th Cir. 1986); Park v. Jack's Food Sys., Inc., 907 F. Supp. 914, 917 (D. Md. 1995).

12

As for the enterprise element, moving defendants argue that plaintiffs impermissibly rely on group pleading when they allege the enterprise as an association-in-fact consisting of the defendants and others. See [D.E. 44] 6–7 (citing Adolphe v. Option One Mortg. Corp., No. 3:11-CV-418, 2012 WL 5873308, at *5 (W.D.N.C. Nov. 20, 2012) (unpublished)). Plaintiffs respond that the amended complaint properly identifies each defendant as an individual person and the association-in-fact of all defendants working together in furtherance of the RICO scheme. See [D.E. 60] 14. Moreover, plaintiffs argue that the association-in-fact enterprise pleading is sufficient when it shows "a continuing unit that functions with a common purpose." Boyle v. United States, 556 U.S. 938, 948 (2009); see [D.E. 60] 12.

Unlike the requirements for pleading the predicate acts of fraud under Rule 9(b), the pleading of "any non-fraud elements of a RICO claim may be pled pursuant to the less-stringent notice pleading standard of Rule 8." WW, LLC v. Coffee Beanery, Ltd., Civ. No. 05-3360, 2012 WL 3728184, at *13 (D. Md. Aug. 27, 2012) (unpublished); see Joy v. Countrywide Fin. Corp., No. 5:10-CV-218, 2011 WL 3652697, at *5 (E.D.N.C. Aug. 19, 2011) (unpublished). Plaintiffs identify each defendant individually, satisfying both Rule 8 and Rule 9(b). See Am. Compl. ¶¶ 1–45. Plaintiffs also identify the role each individual or group of similarly situated individuals played in the overall association. See id. at ¶¶ 11, 18, 45. Plaintiffs detail how the association-in-fact functioned with the oversight of the control persons guiding transactions between plaintiffs and the company borrowers and shell borrowers. See id. at ¶¶ 56–278. Plaintiffs provide the requisite specificity for identifying the individual defendants and differentiating among their roles in the alleged association-in-fact enterprise. See, e.g., Mao v. Glob. Tr. Mgmt., LLC, No. 4:21CV65, 2022 WL 989012, at *8–11 (E.D. Va. Mar. 31, 2022) (unpublished); Navient Sols., LLC v. L. Offs. of Jeffrey Lohman, No. 1:19CV461, 2020 WL 1867939, at *7 (E.D. Va. Apr. 14, 2020); cf. Adolphe, 2012 WL

13

5873308, at *2, 5 (holding that plaintiff failed to "demonstrate the individual roles played by each Defendant, much less how those roles combined to form a continuing unit, or 'enterprise'").

As for plaintiffs' allegations of patterns of racketeering activity, "the existence of an enterprise is an element distinct from the pattern of racketeering activity and proof of one does not necessarily establish the other." Boyle, 556 U.S. at 947 (quotation omitted); see United States v. Turkette, 452 U.S. 576, 583–84 (1981). Plaintiffs allege wire fraud transfers under 18 U.S.C. § 1343 against all defendants, monetary transactions that flowed from that wire fraud under 18 U.S.C. § 1957 against all defendants, and attempted bribery in violation of 18 U.S.C. § 666(a)(2) against Lindberg and GGHI. See Am. Compl. ¶ 291. As for mail or wire fraud, a plaintiff must plausibly allege (1) a scheme to defraud, and (2) use of the mails or wire communication in furtherance of the scheme. See 18 U.S.C. §§ 1341, 1343; United States v. Curry, 461 F.3d 452, 457 (4th Cir. 2006). As for money laundering under 18 U.S.C. § 1957, a plaintiff must plausibly allege that a defendant "knowingly engage[d] . . . in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a); see United States v. Cherry, 330 F.3d 658, 667 (4th Cir. 2003).

When plaintiffs rely on mail and wire fraud as the alleged predicate acts in a civil RICO claim, plaintiffs must plead each with particularity under Rule 9(b). See Menasco, Inc., 886 F.2d at 684. "Rule 9(b) may be satisfied if the complaint sufficiently identifies the time period involved and the content of the misrepresentations." VNA Plus, Inc. v. Apria Healthcare Grp., Inc., 29 F. Supp. 2d 1253, 1263 (D. Kan. 1998) (cleaned up); see Hurd v. Monsanto Co., 908 F. Supp. 604, 614 (S.D. Ind. 1995). "The mailings or wirings do not have to contain the misrepresentations that defrauded the plaintiff, but must merely be in furtherance of the fraudulent, material misrepresentation upon which the plaintiff relied to his detriment and may even include mailings and

14

wirings directed at nonparties." Proctor v. Metro. Money Store Corp., 645 F. Supp. 2d 464, 473–74 (D. Md. 2009); see Schmuck v. United States, 489 U.S. 705, 710–11 (1989); Chisolm v. TransSouth Fin. Corp., 95 F.3d 351, 337 (4th Cir. 1996); United States v. Murr, 681 F.2d 246, 248–49 (4th Cir. 1982); Day v. DB Cap. Grp., LLC, Civ. No. 10-1658, 2011 WL 887554, at *10 (D. Md. Mar. 11, 2011) (unpublished).

Plaintiffs plausibly allege a pattern of racketeering activity against Lindberg, Herwig, Solow, and the other "control person" defendants. See Am. Compl. ¶¶ 136–39, 143–46. Plaintiffs plausibly allege that the control person defendants orchestrated the wire transfers that diverted plaintiffs' loan funds for the enterprise in an attempt to subvert regulators' and plaintiffs' scrutiny. See Am. Compl. ¶¶ 149–56, 230–33; [D.E. 41-1]; [D.E. 41-2]. Plaintiffs' allegations and exhibits detail the dates and specific amounts of the related wire transactions and shell company transfers, which sufficiently put this class of defendants on notice of the RICO predicate claims brought against them. Thus, plaintiffs satisfy Rule 9(b)'s pleading standard. See, e.g., Dye v. MLD Mortg. Inc., Civ. No. 19-3304, 2021 WL 3022683, at *18–19 (D. Md. July 16, 2021) (unpublished); WW, LLC, 2012 WL 3728184, at *10–11, 13–14; CSX Transp., Inc. v. Gilkison, No. 5:05CV202, 2012 WL 1598081, at *10–15 (N.D.W. Va. May 3, 2012) (unpublished); Proctor, 645 F. Supp. 2d at 475. Although plaintiffs do not always name the individual defendants involved in each wire transaction, the amended complaint fairly puts this set of defendants on notice about the RICO allegations against them. See Harrison, 176 F.3d at 784; Park, 907 F. Supp. at 918; cf. R.E. Davis Chem. Corp. v. Nalco Chem. Co., 757 F. Supp. 1499, 1513–17 (N.D. Ill. 1990).

The public nature of the alleged fraud scheme, and the related litigation before this court and other federal district courts within this state, give this court confidence that plaintiffs have substantial

15

pre-discovery evidence concerning the alleged predicate acts of the control person defendants. See Harrison, 176 F.3d at 784. Rule 9(b) has four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of. . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

Id. (quotation omitted). Allowing the claims to proceed against the control person defendants in this action comports with these purposes. See, e.g., Walker v. Hill, No. 21-1803, 2023 WL 129436, at *6 (4th Cir. Jan. 9, 2023) (unpublished); cf. United States ex rel. Nicholson v. MedCom Carolinas, Inc., 42 F.4th 185, 195–96 (4th Cir. 2022).

As for fraud, Solow admitted guilt in a deferred prosecution agreement to conspiracy to commit crimes in connection with the insurance business, wire fraud, money laundering, transactional money laundering, and investment advisor fraud, in violation of 18 U.S.C. §§ 371, 1033, 1343, 1956, 1957, and 15 U.S.C. §§ 80b-6 and 80b-17. See [D.E. 30-2] 1–2; United States v. Solow, No. 3:22-CR-315, [D.E. 6-1] (W.D.N.C. Jan. 20, 2023). Herwig pleaded guilty to identical charges. See [D.E. 58-2] 1–2; United States v. Herwig, No. 3:22-CR-314, [D.E. 10] (W.D.N.C. Dec. 22, 2022). Restitution in those criminal cases is to be credited against money judgments entered against Solow and Herwig in this civil case. See [D.E. 30-2] 2; [D.E. 58-2] 2. Criminal and civil cases against Lindberg and the enterprise are ongoing. See United States v. Lindberg, No. 3:23-CR-48, [D.E. 1] (W.D.N.C. Feb. 23, 2023); Southland Nat'l Ins. Corp. v. Lindberg, 289 N.C. App. 378, 380–82, 889 S.E.2d 512, 515–16 (2023); Colo. Bankers Life Ins. Co. v. Acad. Fin. Assets, LLC, No. 5:20-CV-185, 2021 WL 6064843, at *1–2 (E.D.N.C. Dec. 22, 2021) (unpublished), aff'd, 60 F.4th 148 (4th Cir. 2023); United States v. Lindberg, No. 5:19-CR-22, [D.E. 1] (W.D.N.C. Mar. 18, 2019). On May 16, 2024, a jury found Lindberg guilty of conspiracy to

16

commit honest services wire fraud in violation of 18 U.S.C. § 1349 (count one) and bribery concerning programs, receiving federal funds, and aiding and abetting in violation of 18 U.S.C. §§ 666(a)(2) and 2 (count two). See Lindberg, No. 5:19-CR-22, [D.E. 435] (W.D.N.C. May 16, 2024). The amended complaint fairly puts the control person defendants on notice of plaintiffs' claims.[5]

As for plaintiffs' allegations against the company borrowers and shell borrowers, plaintiffs must plausibly allege the requirements of section 1962(c) as to each individual defendant. See Crest Constr. II, Inc. v. Doe, 660 F.3d 346, 358 (8th Cir. 2011); Barmapov v. Amuial, No. 9:18-CV-80390, 2018 WL 11267365, at *5 (S.D. Fla. Dec. 12, 2018) (unpublished). Plaintiffs only reference the company borrower and shell borrower defendants in the abstract. See Am. Compl. ¶ 291. Although plaintiffs include a list of the alleged wire transactions and fraudulent transfers in Exhibits A and B, these allegations fail to plead with specificity how the company borrowers and shell borrowers "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

The Supreme Court has endorsed the "operation or management test" to describe the scope of persons eligible for section 1962(c) liability. See Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). While not limited to those with primary responsibility for the enterprise's affairs, "some part in directing the enterprise's affairs is required." Id.; see Boyle, 556 U.S. at 953–54 (Stevens, J., dissenting). Liability "depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." Cedric Kushner, 533 U.S. at 163 (cleaned up); see Reves, 507 U.S. at 185.

---

[5] Two of the control person defendants already have judgment entered against them in this case. See [D.E. 37] (Solow); [D.E. 59] (Herwig). The court dismissed EMAM upon plaintiffs' motion under Rule 41(a)(2). See [D.E. 84].

17

Plaintiffs fail to plausibly allege how the company borrower and shell borrower defendants qualify for section 1962(c) liability under the operation or management test. According to plaintiffs, the company borrowers and shell borrowers were units of "the enterprise" that the control person defendants orchestrated and controlled, but the company borrowers and shell borrowers were only orchestrating their own affairs, not directing the enterprise's affairs. Cf. Genty v. Resol. Tr. Corp., 937 F.2d 899, 907 (3d Cir. 1991); Myers v. Lee, No. 1:10CV131, 2010 WL 3745632, at *5 (E.D. Va. Sept. 21, 2010) (unpublished). Thus, plaintiffs fail to plausibly allege that the company borrower and shell borrower defendants fit within section 1962(c). Accordingly, the court dismisses without prejudice the claims in count one against the company borrowers and shell borrowers.

As for counts one through four, moving defendants' arguments for dismissal focus on group pleading and the alleged insufficiency of plaintiffs' allegations of enterprise or a pattern of racketeering activity. Moving defendants do not argue whether alter-ego liability or respondeat superior liability can support the claims in the amended complaint against the corporate defendants. The court declines to examine those issues beyond the "operation or management test." See, e.g., Navient, 2020 WL 1867939, at *7 ("The court has no obligation to fashion arguments for a party . . . .") (quotation omitted).

## C.

In count two, plaintiffs allege violations of 18 U.S.C. § 1962(a) against all defendants. See Am. Compl. ¶¶ 297–302. "To allege a violation of § 1962(a), a plaintiff must show (a) receipt of income from a pattern of racketeering activity, and (b) the use or investment of this income in an enterprise." Busby v. Crown Supply, Inc., 896 F.2d 833, 837 (4th Cir. 1990). Moving defendants argue that plaintiffs failed to plead an enterprise and a pattern of racketeering activity. See [D.E. 44] 14. As discussed, plaintiffs plausibly allege an enterprise and pattern of racketeering activity. In

18

Reves, the Court noted that section 1962 has four subsections, and nothing about the limitations of the operation or management test precludes liability under other subsections (i.e., subsection (a)) which are not similarly limited. See Reves, 507 U.S. at 185; Haroco, Inc. v. Am. Nat. Bank and Tr. Co., 747 F.2d 384, 401–02 (7th Cir. 1984). As in Busby, plaintiffs plausibly allege that all defendants received income from a pattern of racketeering activity and used or invested this income in the larger enterprise. See, e.g., Busby, 896 F.2d at 840. Accordingly, the court denies defendants' motion to dismiss count two.

### D.

In count three, plaintiffs allege violations of 18 U.S.C. § 1962(b) against Lindberg, Herwig, Solow, GGHI, SASL, EMAM, AFA, and GBIG Holdings. See Am. Compl. ¶¶ 303–07. To state a claim under 18 U.S.C. § 1962(b), plaintiffs must plausibly allege: (1) the acquisition or maintenance of an interest in or control; (2) of an enterprise; (3) through a pattern of racketeering activity. See TM, LLC, 2012 WL 4483180, at *2. Defendants argue that plaintiffs fail to plead an enterprise and pattern of racketeering activity. See [D.E. 44] 14.

As discussed, plaintiffs plausibly allege an enterprise and pattern of racketeering activity. Accordingly, the court denies defendants' motion to dismiss count three.

### E.

In count four, plaintiffs allege violations of 18 U.S.C. § 1962(d) against all defendants. See Am. Compl. ¶¶ 308–14. Section 1962(d) prohibits any person from conspiring to violate subsections (a) through (c) of section 1962. See 18 U.S.C. § 1962(d). To state a conspiracy claim, a plaintiff must plausibly allege that the conspirators agreed that at least two conspirators "would commit two or more acts of racketeering." WW, LLC, 2012 WL 3728184, at *15 (quotation omitted); see Pryba,

19

900 F.2d at 760; Foster v. Wintergreen Real Est. Co., 363 F. App'x 269, 275 n.6 (4th Cir. 2010) (per curiam) (unpublished).

Moving defendants argue that plaintiffs fail to plausibly allege an enterprise or pattern of racketeering activity. See [D.E. 44] 14. Similar to count one, plaintiffs fail to plausibly allege the company borrower and shell borrower defendants' involvement in the alleged conspiracy. Plaintiffs fail to plausibly allege how the "agreement" was reached between those defendants and the control person defendants who plaintiffs alleged controlled all of these transactions. "[L]inguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner." Cedric Kushner, 533 U.S. at 164. Although plaintiffs allege that an agreement can reasonably be inferred based on close professional ties and mutually dependent and coordinated efforts, see Am. Compl. ¶ 312, plaintiffs must plausibly allege an agreement by those corporate defendants separate from the independent actions of the control persons. See, e.g., Borg v. Warren, 545 F. Supp. 3d 291, 320–21 (E.D. Va. 2021); TM, LLC, 2012 WL 4483180, at * 4. Accordingly, the court dismisses without prejudice count four against the company borrowers and shell borrowers, but denies defendants' motion to dismiss count four against the control person defendants.

### F.

In count five, plaintiffs allege racketeering under North Carolina law against all defendants. See Am. Compl. ¶¶ 315–29; N.C. Gen. Stat. § 75D-4. Under North Carolina law, no person shall: (1) "[e]ngage in a pattern of racketeering activity or, through a pattern of racketeering activities or through proceeds derived therefrom, acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money;" or (2) " [c]onduct or participate in, directly or indirectly, any enterprise through a pattern of racketeering

20

activity whether indirectly, or employed by or associated with such enterprise;" or (3) "[c]onspire with another or attempt to violate any of the provisions of subdivision (1) or (2) of this subsection." N.C. Gen. Stat. § 75D-4. This statute largely mirrors the federal RICO statute, and mirrors or incorporates the federal definitions of "pattern of racketeering activity," "racketeering activity," and "enterprise." See N.C. Gen. Stat. § 75D-3(a), (b), (c)(2). North Carolina's RICO statute, however, requires one of the two predicate acts to be something other than mail fraud, wire fraud, or fraud in the sale of securities. See N.C. Gen. Stat. § 75D-8(c).

Moving defendants argue that in addition to failing to plausibly allege an enterprise or racketeering activity, plaintiffs' North Carolina RICO count fails because each of the RICO charges against all defendants are predicated on mail or wire fraud. See [D.E. 44] 15–16. Moving defendants' argument equates plaintiffs' 18 U.S.C. § 1957 claims with an allegation of wire fraud. See id. Section 1961, however, lists section 1957 as an independent qualifying predicate act, separate from mail and wire fraud predicate acts. See 18 U.S.C. § 1961(1). Thus, plaintiffs do not fail to plead a RICO predicate other than mail or wire fraud. See Am. Compl. ¶ 291.B. Because defendants make no other argument against plaintiffs' North Carolina RICO claims, the court reaches the same conclusions as in count one. See, e.g., Borg, 545 F. Supp. 3d at 321. Plaintiffs plausibly allege North Carolina RICO claims against the control person defendants but not against the company borrower or shell borrower defendants. Accordingly, the court dismisses without prejudice plaintiffs' count five against the company borrowers and shell borrowers, but denies defendants' motion to dismiss count five against the control person defendants.

G.

In count eight, plaintiffs allege civil conspiracy under North Carolina law against all defendants. See Am. Compl. ¶¶ 347–51. Under North Carolina law, there is not a civil action for

21

conspiracy. Rather, a plaintiff may pursue an action for damages caused by acts committed pursuant to a formed conspiracy. See Reid v. Holden, 242 N.C. 408, 414, 88 S.E.2d 125, 130 (1955). To state a claim, plaintiff must plausibly allege "(1) an agreement between two or more persons (2) to do a wrongful act, (3) commission of some overt act by one member of the conspiracy in furtherance of the objectives, and (4) damage to the plaintiff as a result of the actions of the conspirators." Godfredson v. JBC Legal Grp., P.C., 387 F. Supp. 2d 543, 549 (E.D.N.C. 2005) (quotation omitted); see Delk v. ArvinMeritor, Inc., 179 F. Supp. 2d 615, 629 (W.D.N.C. 2002).

Moving defendants urge the court to dismiss count eight because it is not an independent cause of action and impermissibly relies on group pleading. See [D.E. 44] 17. Plaintiffs recognize that count eight is not an independent cause of action and instead assert count eight as a basis for sharing liability among coconspirators once plaintiffs demonstrate another cause of action for conspiracy. See [D.E. 60] 21–22.

The court reaches the same conclusion as it did in analyzing plaintiffs' section 1962 conspiracy claim. Plaintiffs plausibly allege the elements of civil conspiracy under North Carolina law against the control person defendants but fail to plausibly allege agreement by the company borrowers and shell borrowers. Accordingly, the court dismisses without prejudice count eight against the company borrowers and shell borrowers, but denies defendants' motion to dismiss count eight against the control person defendants.

H.

In count nine, plaintiffs allege unfair and deceptive trade practices under North Carolina law against all defendants. See Am. Compl. ¶¶ 352–55. The North Carolina UDTPA statute provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). To state

22

an unfair and deceptive trade practices claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A practice is deceptive if it has the capacity or tendency to deceive." Walker, 362 N.C. at 72, 653 S.E.2d at 399 (cleaned up). A plaintiff need not "show fraud, bad faith, deliberate or knowing acts of deception, or actual deception, but plaintiff must show that the acts complained of possessed the tendency or capacity to mislead, or created the likelihood of deception." Gress v. Rowboat Co., 190 N.C. App. 773, 776, 661 S.E.2d 278, 281 (2008) (cleaned up); see Overstreet v. Brookland, Inc., 52 N.C. App. 444, 452–53, 279 S.E.2d 1, 7 (1981).

Moving defendants argue that plaintiffs impermissibly rely on group pleading for count nine. See [D.E. 44] 17. As discussed, plaintiffs plausibly allege federal and state racketeering claims against the control person defendants. Plaintiffs fail, however, to plausibly allege that the surviving claim for section 1962(a) liability against the company borrowers and shell borrowers qualifies as an unfair and deceptive act under North Carolina law. Therefore, the court dismisses without prejudice count nine against the company borrowers and shell borrowers, but denies defendants' motion to dismiss count nine against the control person defendants.

III.

Moving defendants urge the court to stay this action while other related cases are pending in state court because of the risk of inconsistent rulings. See [D.E. 44] 17–18 (citing Foushee v. RT Vanderbilt Holding Co., No. 5:17-CV-71, 2020 WL 917250, at *1 (E.D.N.C. Feb. 25, 2020)

23

(unpublished); Duke Energy Progress, Inc. v. Frontier Commc'ns of the Carolinas, Inc., No. 5:13-CV-617, 2014 WL 4948112, at *3 (E.D.N.C. Sept. 25, 2014) (unpublished)). Plaintiffs respond that the party seeking a stay must justify it by clear and convincing circumstances outweighing the potential harm to the party against whom it is operative. See [D.E. 60] 23; Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983).

Moving defendants fail to justify a stay. The related state court cases are primarily breach of contract cases, and moving defendants provide no justification why adjudicating plaintiffs' claims in the amended complaint would lead to inconsistent rulings. Moreover, the related criminal proceedings against Lingberg do not justify a stay of this civil proceeding. Thus, the court denies the motion to stay.

## IV.

In sum, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss [D.E. 43] and DISMISSES WITHOUT PREJUDICE counts one, four, five, eight, and nine against Alpharetta, LLC, AR Purchasing Solutions, LLC, AR Purchasing Solutions 2, LLC, Comply Smart, LLC, Augusta Asset Management, LLC, Baldwin Asset Management, LLC, Capital Assets Fund I, LLC, Capital Assets Fund II, LLC, Capital Assets Fund IV, LLC, Capital Assets Fund V, LLC, Capital Assets Management II, LLC, Capital Assets Management III, LLC, Chatsworth Asset Management, LLC, CV Investments, LLC, Damascus Asset Management, LLC, Ephesus Asset Management, LLC, Forest Part Asset Management, LLC, Gilford Asset Management, LLC, Hampton Asset Management, LLC, HPCSP Investments, LLC, Intralan Investments Limited, Iron City Asset Management, LLC, iTech Funding, LLC, Jackson Asset Management, LLC, Kite Asset Management, LLC, Lilly Asset Management, LLC, Marshall Asset Management, LLC, Paradise Asset Management, LLC, Rockdale Asset Management, LLC, Summerville Asset Management,

24

LLC, Tybee Island Asset Management, LLC, and Standard Financial Limited. The court DENIES defendants' motions to dismiss for lack of personal jurisdiction and insufficient service of process [D.E. 85, 86]. The court DENIES as moot defendants' first motion to dismiss [D.E. 26]. The court DENIES defendants' motion to stay.

SO ORDERED. This 13 day of August, 2024.

JAMES C. DEVER III
United States District Judge